UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

TRUMP TIGHT, LLC
D/B/A TRUMP RESTAURANT
AND LOUNGE,

                Plaintiff,

v.                                           Civil Action No. 3:15CV175

RAYMOND R. BELL and
VINCENT B. GIVENS,

                Defendants.

**BRIEF IN SUPPORT OF GIVENS' RULE 12(b)(6) MOTION TO DISMISS**

COMES NOW Defendant, Lieutenant Vincent B. Givens ("Lt. Givens"), by counsel, and for his Brief in Support of his FRCP Rule 12(b)(6) Motion to Dismiss, states as follows:

**I.    Introduction**

Plaintiff Trump Tight, LLC ("Trump Tight") brings this 42 U.S.C. § 1983 action alleging deprivations of property and liberty interests without procedural and substantive due process under the Fourteenth Amendment, an equal protection violation under the Fourteenth Amendment, unlawful seizure in violation of the Fourth Amendment, and a state claim under Va. Code §§ 18.2-499 and 500 against Sheriff Raymond R. Bell ("Sheriff Bell") and Lt. Givens arising from security services provided by the Sussex County Sheriff's Office. Specifically, Trump Tight alleges Sheriff Bell and Lt. Givens unlawfully required and collected cash payments for security services provided by Sussex County Sheriff's deputies to Trump Tight's lounge, unlawfully reduced the total number of patrons allowed in the lounge, unlawfully prohibited Trump Tight from allowing patrons between the ages of eighteen and twenty years old

from entering the lounge, and unlawfully shut down Trump Tight's lounge when it refused to comply.

Lt. Givens moves this Court to dismiss Trump Tight's claims against him for failure to state claims under the Fourteenth Amendment or pursuant to state law. Even if Trump Tight did state cognizable claims, Lt. Givens is protected by qualified immunity.

## II.   Standard on 12(b)(6) Motion to Dismiss

> [A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.

*Edwards v. City of Goldsboro*, 178 F.#d 231, 244 (4th Cir. 1999). The Court, however, "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarrantino v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (*quoting Eastern Shore Mkts., Inc v. J. D. Associates, Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000). It must decide whether it is possible that the allegations in the complaint "are enough to raise a right to relief above the speculative level." *See Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (*quoting Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). A complaint should be dismissed if it fails to allege facts sufficient "to state a claim to relief that is plausible on its face." *Monroe*, *supra* at 380 (*citing Giarrantino*, 521 F.3d at 302).

## III.   Plaintiff's § 1983 Claims for Violation of his Fourteenth Amendment Rights to Procedural and Substantive Due Process (Counts I-III) Should Be Dismissed

In order to state a claim for violation of procedural due process, Trump Tight must allege (1) it had a property interest; (2) that Lt. Givens deprived it of that interest; (3) without giving Trump Tight due process. *See Bennett v. Monette*, 507 F.Supp.2d 514, 517 (E.D.N.C. 2007)

(*citing Tri-County Paving, Inc. v. Ashe County,* 281 F.3d 430, 436 (4th Cir.2002). "The Fourteenth Amendment does not create property interests. 'Rather, they are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law.' *Id. (quoting Tri-County Paving,* 281 F.3d at 436).

The government is precluded from depriving individuals from their liberty or property without procedural due process pursuant to the Due Process Clause of the Fifth and Fourteenth Amendment. *See Bennett, supra* at 517 (*citing Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). While procedural due process typically requires a pre-deprivation hearing before the deprivation takes place, it is not required in all circumstances. *Id*. at 517(*citing Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Where "a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Id*. at 517 (*quoting Gilbert v. Homar,* 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997).

In order to state a claim for violation of substantive due process, Trump Tight must allege: (1) it had a property interest; (2) Lt. Givens deprived it of its property interest; and (3) Lt. Givens' conduct went "so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Bennett*, *supra* at 519 (*citing Tri-County Paving*, 281 F.3d at 440). A violation of substantive due process requires conduct:

> [S]o arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of an adequate rectification by any post-deprivation state remedies.

*Id*. at 519 (*quoting Tri-County Paving*, 281 F.3d at 440).

Much like the case at issue, the plaintiff in *Bennett* sued a county sheriff for shutting down a rap music concert earlier than its scheduled end time, as provided by the plaintiff's contract with the Jaycees. The plaintiff contended his procedural and substantive due process rights were violated because the sheriff failed to get a court order before shutting down the concert. The plaintiff also claimed his right to equal protection was violated by the sheriff's selective enforcement of a noise ordinance. The Court explained that plaintiff's remedy for the sheriff's unauthorized act in shutting down the concert was a North Carolina state claim for tortious interference with contract. *Id.* at 519-520. "Where state law provided a post-deprivation means for plaintiffs to redress such a deprivation, a section 1983 procedural due process claim is not available." *Id.* (*citing Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); other citations omitted).

Like North Carolina law, Virginia law allows Trump Tight to sue the sheriff or Lt. Givens, in their individual capacity, for tortious interference with its contracts. *See Chaves v. Johnson*, 230 Va. 112, 119-21, 335 S.E.2d 97, 102 (1985). Because Trump Tight had a post-deprivation remedy, he does not have a 42 U.S.C. § 1983 procedural due process claim. Even so, "[A] mere breach of a contractual right is not a deprivation of property without *constitutional* due process of law.... Otherwise, virtually every controversy involving an alleged breach of contract by a government ... would be a constitutional case." *Coastland Corp. v. County of Currituck,* 734 F.2d 175, 178 (4th Cir.1984).

Trump Tight also had the ability to seek injunctive and declaratory relief related to the payments it was making to the deputies for security and the alleged reduction in the number of patrons imposed by Sheriff Bell.[1] *See* Va. Code §§ 8.01-184 and 620. In paragraphs 18 and 19

---

[1] Trump Tight alleges that Lt. Givens conveyed the message that Sheriff Bell reduced the amount of patrons allowed in the club, not that Lt. Givens made the reduction himself. See Complaint ¶ 34.

4

of the Complaint, Trump Tight alleges Earl Cross informed its managers that security had been provided in the past by Sussex County deputies under the management of Sheriff Bell and Lt. Givens. It also alleges that Earl Cross recommended Trump Tight make cash payments to Sheriff Bell through Lt. Givens, but that Trump Tight refused to make such cash payments because it considered them to be "illegal bribes." At that time, Trump Tight had knowledge necessary to seek injunctive or declaratory relief. In paragraph 22, Trump Tight alleges that, beginning on or about October 6, 2013, Lt. Givens and other deputies would appear in uniform at the lounge and provide security services outside and at the door of the lounge. Again, Trump Tight had the ability to, but did not seek declaratory or injunctive relief. In paragraph 34, Trump Tight alleges that Lt. Givens told Trump Tight that, per Sheriff Bell, the number of patrons would be reduced going forward. At that time, Trump Tight could have sought declaratory and injunctive relief. Likewise, in paragraph 41, Trump Tight alleges it advised Sheriff Bell by telephone on July 10, 2014 that it planned to open the lounge to patrons aged eighteen years old and above. On that same telephone call, Sheriff Bell advised Trump Tight that he would not allow them to open the lounge to anyone under the age of twenty-one years. Despite Sheriff Bell's warning that he would not allow it, Trump Tight opened the lounge to patrons aged eighteen years old and above on July 12, 2014. *See* Complaint ¶ 42. Trump Tight also admitted it "knew the Sheriff had no authority to prohibit them from holding Trump open to those eighteen to twenty years old" when it opened on July 12, 2014. *See* Complaint ¶ 42. Despite this knowledge, and despite being warned by Sheriff Bell, Trump Tight did not seek declaratory or injunctive relief. Trump Tight does not have a constitutional injury where it failed to avail itself of its pre-deprivation or post-deprivation remedies.

Trump Tight makes a conclusory allegation that it was deprived of a liberty interest, but it fails to articulate, with any specificity, the liberty interest of which it was deprived. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).

Unlike its liberty interest, Trump Tight does allege specific property rights of which it claims it was deprived in paragraph 91 of Complaint, *i.e.*, licenses to do business (including its ABC license), its lease, its trademark and other intellectual property, its reputation and goodwill, its inventory and equipment, cash on hand, and it ongoing business concern. However, Trump Tight's own allegations belie the allegation that it actually was deprived of those rights by Lt. Givens. Trump Tight alleges in paragraph 51 that Sheriff Bell threatened *one* of Trump Tight's managers with arrest if a deputy was not paid for security he provided on another night. In paragraph 73, Trump Tight alleges, "Having reasonable fear based on Bell's threats of arrest, Trump's management closed the business and surrendered Trump's ABC license." Trump Tight goes on to allege in paragraph 74 that it lost a certain amount in anticipated profits, unrecovered capital investment losses, damage to its good will, damage to its operation as an on-going business, and future lost revenues. Trump Tight does not allege that Lt. Givens made any threats of arrest and admits that it closed its business as a result of Sheriff Bell's one threat. Any deprivation of the property occurred after Trump Tight shuttered its business, and Trump Tight admits it did so as a result of Sheriff Bell's threat of arrest. Trump Tight fails to allege any actions by Lt. Givens giving rise to a deprivation of Trump Tight's property interest.

For all of these reasons, Trump Tight fails to state a claim for procedural or substantive due process violations under the Fourteenth Amendment against Lt. Givens.

## IV. Plaintiff's Claim for Violation of the Equal Protection Clause of the Fourteenth Amendment (Count V) Should Be Dismissed

Like the plaintiff in *Bennett*, Trump Tight also makes a claim for violation of his equal protection rights by selectively enforcing requirements that it pay deputies to provide security at Trump Tight's establishment while alcohol was being served. In order to prove such a selective enforcement claim, Trump Tight must allege: (1) Trump Tight was treated differently from others who are similarly situated; and (2) the treatment, "was intentional or purposeful, based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bennett*, *supra* at 520; *see also Central Radio Co. Inc. v. City of Norfolk, Virginia*, 776 F.3d 229, 238-39 (4th Cir. 2015). Trump Tight's claim for selective enforcement must fail based on paragraph 72 of its Complaint. Paragraph 72 reads:

> It appears Defendants were operating similar activities at other local businesses, as the August 18 FOIA response of the Sheriff (Exhibit H) apparently inadvertently provided a copy of a January 3, 2014 on official letter signed by Bell as Sheriff to "Young Men's Social Club" stating, "This is to notify you that effective January 1, 2014 the hourly rate for security at club events is increased to $35.00 per hour per deputy." Moreover, Earl Cross indicated that the deputies acted similarly with respect to the prior business at that location. Moreover, the facilities has since been rented to another business, and Givens and other deputies provided security at this business.

Trump Tight's conclusory allegation that it was treated differently than other similarly situated businesses is contradicted by its own allegations in paragraph 72. Instead, the allegations in paragraph 72 admit that Sheriff Bell and Lt. Givens treated Trump Tight the same as they did other businesses. Furthermore, Trump Tight fails to articulate any reason for Lt. Givens' alleged treatment of Trump Tight. For these reasons, Trump Tight's alleged selective enforcement claim against Lt. Givens should be dismissed.

## V. Plaintiff's Claim for Unlawful Seizure Under the Fourth Amendment (Count IV) Should be Dismissed

Unlawful seizure under the Fourth Amendment falls into two categories: (1) unlawful arrest; or (2) malicious prosecution. *See Durham v. Elkins*, 2009 WL 1651057 *2 (W.D.Va. 2009). Trump Tight alleges that Sheriff Bell threatened arrest, but does not allege an actual arrest took place. If a seizure does not conclude in an arrest, the seizure only requires reasonableness. *See Moore v. Morton*, 958 F.2d 368 *2 (4th Cir. 1992)(*citing Terry v. Ohio,* 392 U.S. 1, 16 (1968). An actual arrest, on the other hand, would require a higher finding of probable cause. *See Moore*, 958 F.2d at *2 (4th Cir. 1992)(*citing Gerstein v. Pugh,* 420 U.S. 103, 111 (1975); *Simons v. Montgomery County Police Officers,* 762 F.2d 30, 33 (4th Cir.1985), *cert. denied,* 474 U.S. (1986). Trump Tight's allegations also do not allege the necessary elements for unlawful seizure under a malicious prosecution theory. *See Durham*, at *2 (citations omitted). At bottom, Lt. Givens' actions must be viewed in light of reasonableness.

Sheriff Bell and his deputies (including Lt. Givens) acted to maintain the public peace and safety. Not only are the sheriff and his deputies charged with enforcing criminal law, they also must maintain the public peace. *See Karadi v. Jenkins*, 7 Fed.Appx. 185, 193-94 (4th Cir. 2001)(other citations omitted). Pursuant to incident reports attached to the Complaint at Exhibit H, arrests had been made at the Trump Lounge for disorderly conduct (6 total), obstruction of justice (2 total), assault and battery (2 total), possession of marijuana (2 total), underage possession of alcohol, theft from a motor vehicle[2] (3 total), probation violation, assault on a law enforcement officer, possession of a stolen firearm[3] (3 total), and possession of a firearm by a convicted felon, beginning from the time period October 1, 2013 (see letter to Bodoh dated

---

[2] One of the thefts included the theft of a handgun.
[3] One firearm was the stolen firearm referred to in footnote no. 2. Another stolen firearm was a purple stun gun reported stolen. One of the men arrested for possession of the stolen firearm was under twenty-one years of age.

8

August 18, 2014, also attached as part of Exhibit H) until the night the lounge was shut down on July 12, 2014. Sheriff Bell and his deputies had reasonable cause for concern where multiple violations of the law had already occurred in the relatively short history of the lounge. It was reasonable for Lt. Givens to shut down the lounge for allowing patrons under the age of twenty-one years old into the lounge, after Trump Tight was directed not to do so by Sheriff Bell, and especially in light of the fact that the lounge had a history of alcohol-induced violence, drugs, illegal firearms, and underage people getting into the lounge or hanging out in the parking lot (see the incident reports dated April 10, 2014 and July 6, 2014, attached as part of Exhibit H). These incident reports evidence the reasonableness of the sheriff's deputies' actions, including those of Lt. Givens, in light of their knowledge of the problems which had already beleaguered the lounge. *See Turner v. Dammon,* 848 F.2d 440, 447 (4th Cir.1988) (knowledge of a history of violations is grounds for increased police attention), *abrogated on other grounds, Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *see also Cottom v. Town of Seven Devils*, 2001 WL 1019410 *5 (W.D.N.C. 2001) (finding actions of police in increasing patrols of a ski resort, patrolling the lot, looking in vehicles, following vehicles leaving the resort, conducting sobriety tests, interrogating patrons, and searching patrons in an effort to insure compliance with alcoholic beverage laws and maintain peace were reasonable and not a violation of the Fourth Amendment). For these reasons, Lt. Givens' actions were reasonable and Trump Tight's claim against him for unlawful seizure in violation of the Fourth Amendment should be dismissed.

## VI. Plaintiff's State Claim Under Va. Code §§ 18.2- 499 and 500 (Count VI) Should Be Dismissed

A claim for conspiracy to harm one in a trade or business under Va. Code §§ 18.2-499 and 500 requires a showing that two or more persons combined or acted in concert. *See* Va.

9

Code §§ 18.2-499 and 500. A principal and agent are not separate persons for purposes of these conspiracy statutes. *See Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 251 Va. 28, 36, 466 S.E.2d 382, 386-87 (1996). Trump Tight alleges Sheriff Bell, Lt. Givens and other deputies combined or acted in concert to injury Trump Tight's business. Lt. Givens and the deputies were and are agents of Sheriff Bell and, therefore Lt. Givens and Sheriff Bell are not separate persons for purposes of these statutes. *See Whited v. Fields*, 581 F.Supp. 1444, 1455 (W.D. Va. 1984)("[A] sheriff and his deputy … are as one person."). Because of this principal/agent relationship, Trump Tight has not alleged a conspiracy of two or more persons necessary to state a claim under Va. Code §§ 18.2-499 and 500. Any independent personal stake exception, *see Greenville Publishing Company, Inc. v. Daily Reflector Inc.*, 496 F.2d 391 (1974), to this intracorporate immunity doctrine has not been adopted by the Virginia Supreme Court. *See Little Professor Book Co. v. Reston North Pt. Village*, 41 Va. Cir. 73 *5-6 (Fairfax Co. 1996). Furthermore, Lt. Givens was acting within the scope of his employment as a sheriff's deputy when he provided security, supervised deputies provided security, and shut down the lounge per Sheriff Bell's instructions. *See Fox v. Deese*, 234 Va. 412, 428, 362 S.E.2d 699, 708 (1987). For these reasons, Trump Tight's state statutory conspiracy claim against Lt. Givens should be dismissed.

**VII. Lt. Givens is Protected by Qualified Immunity**

While Lt. Givens was merely following the orders of Sheriff Bell and should not be held liable for any of the claims by Trump Tight on that basis, Lt. Givens is also protected by the doctrine of qualified immunity:

> The central question in determining the issue of qualified immunity is whether or not the conduct of the government official violated "clearly established law," *i.e.*, the "'objective legal reasonableness' of [his] action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken ...." "This

> is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." "[U]nder [this] test, an official may be entitled to immunity from suit even where he has violated a plaintiff's rights—if [those rights] were not then 'clearly established' or if a 'reasonable person' in the official's position could have failed to appreciate that his conduct would violate them." A court, in making the determination as to whether a constitutional right has been violated, should not look at the right at its most general level but at "its application to the particular conduct being challenged." If there exists a "legitimate question" as to whether particular conduct violates a particular right then the right is not clearly established and qualified immunity applies.

See *Korb v. Lehman*, 919 F. 2d. 243, 247 (4th Cir. 1990) (citations omitted). Trump Tight did not suffer a constitutional violation at the hands of Lt. Givens. Even if it had, Lt. Givens would have no reason to know that his conduct violated Trump Tight's rights.

"The inquiry on qualified immunity is whether a reasonable officer could have believed that their actions were objectively reasonable in light of the circumstances." *See Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994) (citations omitted). As stated in Section V above, Lt. Givens acted reasonably to maintain the public peace and safety when Trump Tight failed to follow Sheriff Bell's instructions, and in light of the lounge's history of violations, including those related to underage drinking, disorderly conduct, drugs, and weapons since it opened. It was also reasonable for Lt. Givens to have believed his actions were reasonable in light of the fact that he was following orders given to him by Sheriff Bell when he allegedly shut down the lounge, *see* Complaint ¶¶ 46-47, oversaw deputies providing security at the lounge, *see* Complaint ¶ 24, 33, and told Trump Tight managers that Sheriff Bell directed that the number of patrons allowed in the lounge be reduced. *See* Complaint ¶ 34. For these reasons, Lt. Givens should be protected by qualified immunity and the claims against him should be dismissed.

## VIII. Conclusion

WHEREFORE, Lt. Givens respectfully requests that Trump's case against him be dismissed with prejudice. Lt. Givens asks that this matter be decided upon the papers unless the Court deems a hearing necessary.

              Respectfully submitted,

              VINCENT B. GIVENS

              By Counsel

  /s/ Leslie A. Winneberger   .
William F. Etherington (VSB # 14152)
Leslie A. Winneberger (VSB # 45040)
701 East Franklin Street, Suite 1200
Richmond, Virginia 23219
(804) 788-1500
(804) 788-0135 (facsimile)
wetherington@bealelaw.com
lwinneberger@bealelaw.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 23rd day of April, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

  Thomas H. Roberts (VSB # 26014)
  Andrew T. Bodoh (VSB # 80143)
  Thomas H. Roberts & Associates, P.C.
  105 South 1st Street
  Richmond, VA 23219
  (804) 783-2000
  (804) 783-2105 (facsimile)
  tom.roberts@robertslaw.org
  andrew.bodoh@robertslaw.org
  Counsel for Plaintiff

              /s/ Leslie A. Winneberger   .
            William F. Etherington (VSB # 14152)
            Leslie A. Winneberger (VSB # 45040)
            701 East Franklin Street, Suite 1200
            Richmond, Virginia 23219
            (804) 788-1500
            (804) 788-0135 (facsimile)
            wetherington@bealelaw.com
            lwinneberger@bealelaw.com
            Counsel for Vincent B. Givens