IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TRUME TIGHT, LLC, ) | |
| D/B/A TRUMP RESTAURANT ) | |
| AND LOUNGE ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 3:15cv175 |
| ) | |
| RAYMOND R. BELL and ) | |
| VINCENT B. GIVENS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY RAYMOND BELL

Defendant Raymond Bell, by counsel, submits this memorandum in support of his motion to dismiss this action as against him, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

### ARGUMENT

### POINT I

### Standards on Motion to Dismiss

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

---

[1] Defendant Bell has never been served with process in this action. It has just come to the attention of the defendant, however, that the plaintiff has filed a document in this Court purporting to have rubberbanded process to the door of plaintiff's residence. The defendant has never received and has no knowledge of any such posting, nor has the defendant received any mailing in that regard.

possibility of misconduct, the complaint has alleged – but has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. at 679.

An action cannot survive a Rule 12(b)(6) motion to dismiss when the claims asserted in the Amended Complaint are not supported by "[f]actual allegations . . . enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.

Furthermore, a claim against a particular defendant cannot survive a motion to dismiss unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. An official can be held liable in his personal capacity only if his "own individual actions . . . violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. at 676.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief"'." *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 557).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679.

**POINT II**

**Plaintiff's § 1983 Claims for Violation of His Fourteenth Amendment Rights to Procedural and Substantive Due Process (Counts I-III) Should Be Dismissed**

In order to state a claim for violation of procedural due process, Trump Tight must allege that it had a property interest, and that Bell deprived it of that interest without giving Trump Tight due process. *See Bennett v. Monette*, 507 F. Supp. 2d 514, 517 (E.D.N.C. 2007) (*citing*

2

*Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 436 (4th Cir. 2002). "The Fourteenth Amendment does not create property interests. 'Rather, they are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law.'" *Id. (quoting Tri-County Paving*, 281 F.3d at 436).

The government is precluded from depriving individuals of their liberty or property without procedural due process pursuant to the Due Process Clause of the Fifth and Fourteenth Amendment. *See Bennett, supra* at 517 (*citing Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). While procedural due process typically requires a pre-deprivation hearing before the deprivation takes place, it is not required in all circumstances. *Id*. at 517 (*citing Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Where "a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Id*. at 517 (*quoting Gilbert v. Homar*, 520 U.S. 924, 930 (1997).

In order to state a claim for violation of substantive due process, Trump Tight must allege that it had a property interest, that Bell deprived it of its property interest, and that Bell's conduct went "so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Bennett, supra* at 519 (*citing Tri-County Paving*, 281 F.3d at 440). A violation of substantive due process requires conduct:

> [S]o arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of an adequate rectification by an post-deprivation state remedies.

*Id*. at 519 (*quoting Tri-County Paving*, 281 F.3d at 440).

Much like the case at issue, the plaintiff in *Bennett* sued a county sheriff for shutting

3

down a rap music concert earlier than its scheduled end time, as provided by the plaintiff's contract with the Jaycees. The plaintiff contended his procedural and substantive due process rights were violated because the sheriff failed to get a court order before shutting down the concert. The plaintiff also claimed his right to equal protection was violated by the sheriff's selective enforcement of a noise ordinance. The Court explained that plaintiff's remedy for the sheriff's unauthorized act in shutting down the concert was a North Carolina state caim for tortious interference with contract. *Id*. at 519-520. "Where state law provided a post-deprivation means for plaintiffs to redress such a deprivation, a section 1983 procedural due process claim is not available." *Id*. (*citing Hudson v. Palmer*, 468 U.S. 517, 533 (1984); other citations omitted).

Like North Carolina law, Virginia law allows Trump Tight to sue Bell, in his individual capacity, for tortious interference with its contracts. *See Chaves v. Johnson*, 230 Va. 112, 119-21 (1985). Because Trump Tight had a post-deprivation remedy, he does not have a 42 U.S.C. § 1983 procedural due process claim. Even so, "a mere breach of a contractual right is not a deprivation of property without *constitutional* due process of law . . . . Otherwise, virtually every controversy involving an alleged breach of contract by a government . . . would be a constitutional case." *Coastland Corp. v. County of Currituck*, 734 F.2d 175, 178 (4th Cir. 1984).

Trump Tight also had the ability to seek injunctive and declaratory relief related to the payments it was making to the deputies for security and the alleged reduction in the number of patrons imposed by Bell. *See* Va. Code §§ 8.01-184 and 620. In paragraphs 18 and 19 of the Complaint, Trump Tight alleges Earl Cross informed its managers that security had been provided in the past by Sussex County deputies under the management of Bell and defendant Vincent Givens. It also alleges that Cross recommended Trump Tight make cash payments

4

through Givens, but that Trump Tight refused to make such cash payments because it considered them to be "illegal bribes." At that time, Trump Tight had knowledge necessary to seek injunctive or declaratory relief. In paragraph 22, Trump Tight alleges that, beginning on or about October 6, 2013, Givens and other deputies would appear in uniform at the lounge and provide security services outside and at the door of the lounge. Again, Trump Tight had the ability to, but did not seek declaratory or injunctive relief. In paragraph 34, Trump Tight alleges that Givens told Trump Tight that, per Bell, the number of patrons would be reduced going forward. At that time, Trump Tight could have sought declaratory and injunctive relief. Likewise, in paragraph 41, Trump Tight alleges it advised Bell by telephone on July 10, 2014 that it planned to open the lounge to patrons aged eighteen years old and above, and that Bell advised Trump Tight that he would not allow them to open the lounge to anyone under the age of twenty-one years. Paragraph 42 alleges that, despite Bell's warning that he would not allow it, Trump Tight opened the lounge to patrons aged eighteen years old and above on July 12, 2014. Trump Tight also alleges in that paragraph that it knew the Sheriff had no authority to prohibit them from holding Trump open to those eighteen to twenty years old when it opened on July 12, 2014. Despite that alleged knowledge and warning, Trump Tight did not seek declaratory or injunctive relief. Trump Tight does not have a constitutional injury where it failed to avail itself of its pre-deprivation or post-deprivation remedies.

Trump Tight makes a conclusory allegation that it was deprived of a liberty interest, but it fails to articulate, with any specificity, the liberty interest of which it was deprived. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Unlike its liberty interest, Trump Tight does allege specific property rights of which it claims it was deprived in paragraph 91 of the Complaint, *i.e.*, licenses to do business (including its ABC license), its lease, its trademark and other intellectual property, its reputation and goodwill, its inventory and equipment, cash on hand, and its ongoing business concern. However, Trump Tight's own allegations belie the allegation that it actually was deprived of those rights by Bell. Trump Tight alleges in paragraph 51 that Bell threatened *one* of Trump Tight's managers with arrest if a deputy was not paid for security the deputy provided on another night. In paragraph 73, Trump Tight alleges, "Having reasonable fear based on Bell's threats of arrest, Trump's management closed the business and surrendered Trump's ABC license." Trump Tight goes on to allege in paragraph 74 that it lost a certain amount in anticipated profits, unrecovered capital investment losses, damage to its good will, damage to its operation as an on-going business, and future lost revenues. Trump Tight alleges, however, that it chose to shutter its business after an alleged threat of arrest against one of the management for an unpaid payment to a deputy for security, which amount was paid before Trump Tight chose to close its business permanently, and provides no basis for a deprivation of property interest claim.

It is respectfully submitted that Trump Tight fails to state a claim for procedural or substantive due process violations under the Fourteenth Amendment against Bell.

### POINT III

**Plaintiff's Claim for Violation of the Equal Protection Clause
of the Fourteenth Amendment (Count V) Should Be Dismissed**

Like the plaintiff in *Bennett*, Trump Tight also makes a claim for violation of his equal

protection rights by selectively enforcing requirements that it pay deputies to provide security at Trump Tight's establishment while alcohol was being served. In order to prove such a selective enforcement claim, Trump Tight must allege that Trump Tight was treated differently from others who are similarly situated, and the treatment "was intentional or purposeful, based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bennett*, *supra* at 520; *see also Central Radio Co. Inc. v. City of Norfolk, Virginia*, 776 F.3d 229, 238-39 (4th Cir. 2015). Trump Tight's claim for selective enforcement must fail based on paragraph 72 of its Complaint. Paragraph 72 reads:

> It appears Defendants were operating similar activities at other local businesses, as the August 18 FOIA response of the Sheriff (Exhibit H) apparently inadvertently provided a copy of a January 3, 2014 on official letter signed by Bell as Sheriff to "Young Men's Social Club" stating, "This is to notify you that effective January 1, 2014 the hourly rate for security at club events is increased to $35.00 per hour per deputy." Moreover, Earl Cross indicated that the deputies acted similarly with respect to the prior business at that location. Moreover, the facilities has since been rented to another business, and Givens and other deputies provided security at this business.

Trump Tight's conclusory allegation that it was treated differently than other similarly situated businesses is contradicted by its own allegations in paragraph 72. Instead, the allegations in paragraph 72 admit that Bell and Givens treated Trump Tight the same as other businesses. Furthermore, Trump Tight fails to articulate any reason for the alleged treatment of Trump Tight. It is respectfully submitted that Trump Tight's alleged selective enforcement claim should be dismissed.

### POINT IV

### Plaintiff's Claim for Unlawful Seizure Under the Fourth Amendment (Count IV) Should Be Dismissed

Unlawful seizure under the Fourth Amendment falls into two categories: (1) unlawful arrest; or (2) malicious prosecution. *See Durham v. Elkins*, 2009 WL 1651057 *2 (W.D. Va. 2009). Trump Tight alleges that Bell threatened arrest, but does not allege an actual arrest took place. If a seizure does not conclude in an arrest, the seizure only requires reasonableness. *See Moore v. Morton*, 958 F.2d 368 *2 (4th Cir. 1992) (*citing Terry v. Ohio*, 392 U.S. 1, 16 (1968). An actual arrest, on the other hand, would require a higher finding of probable cause. *See Moore*, 958 F.2d at *2 (4th Cir. 1992) (*citing Gerstein v. Pugh*, 420 U.S. 103, 111 (1975); *Simons v. Montgomery County Police Officers*, 762 F.2d 30, 33 (4th Cir. 1985), *cert. denied*, 474 U.S. (1986). Trump Tight's allegations also do not allege the necessary elements for unlawful seizure under a malicious prosecution theory. *See Durham*, at *2 (citations omitted). At bottom, Bell's actions must be viewed in light of reasonableness.

Bell and his deputies (including Givens) acted to maintain the public peace and safety. Not only are the sheriff and deputies charged with enforcing criminal law, but they also must maintain the public peace. *See Karadi v. Jenkins*, 7 Fed. Appx. 185, 193-194 (4th Cir. 2001) (other citations omitted). Pursuant to incident reports attached to the Complaint at Exhibit H, arrests had been made at the Trump Lounge for disorderly conduct (6 total), obstruction of justice (2 total), assault and battery (2 total), possession of marijuana (2 total), underage possession of alcohol, theft from a motor vehicle (3 total) (one of which involved a handgun), probation violation, assault on a law enforcement officer, possession of a stolen firearm (3 total) (one of

which involved possession of a stolen firearm by someone under twenty-one years of age), and possession of a firearm by a convicted felon, beginning from the time period October 1, 2013 until Trump Lounge closed (included in Complaint Exhibit H).

Bell and his deputies had reasonable cause for concern where multiple violations of the law had already occurred in the relatively short history of the lounge. It was reasonable for Bell and Givens to have shut down the lounge for allowing patrons under the age of twenty-one years old into the lounge, after the lounge was directed not to do so, and especially in light of the lounge's history of alcohol-induced violence, drugs, illegal firearms, and underage people getting into the lounge or hanging out in the parking lot (*see* incident reports included in Complaint Exhibit H). These incident reports evidence the reasonableness of the actions of Bell and the deputies including Givens, in light of their knowledge of the problems that had already been occurring at the lounge. *See Turner v. Dammon*, 848 F.2d 440, 447 (4th Cir. 1988) (knowledge of a history of violations is grounds for increased police attention), *abrogated on other grounds, Johnson v. Jones*, 515 U.S. 304 (1995); *see also Cottom v. Town of Seven Devils*, 2001 WL 1019410 *5 (W.D.N.C. 2001) (finding actions of police in increasing patrols of a ski resort, patrolling the lot, looking in vehicles, following vehicles leaving the resort, conducting sobriety tests, interrogating patrons, and searching patrons in an effort to insure compliance with alcoholic beverage laws and maintain peace were reasonable and not a violation of the Fourth Amendment). It is respectfully submitted that the alleged actions of Bell and the deputies including Givens were reasonable, and Trump Tight's claim for unlawful seizure in violation of the Fourth Amendment should be dismissed.

## POINT V

### Plaintiff's State Claim Under Va. Code §§ 18.2-499 and 500 (Count VI) Should Be Dismissed

A claim for conspiracy to harm one in a trade or business under Va. Code §§ 18.2-499 and 500 requires a showing that two or more person combined or acted in concert. *See* Va. Code §§ 18.2-499 and 500. A principal and agent are not separate persons for purposes of theses conspiracy statutes. *See Charles E. Brauer Co. v. NationsBank of Virginia*, *N.A.*, 251 VA. 28, 36 (1996). Trump Tight alleges that Bell, Givens, and other deputies combined or acted in concert to injure Trump Tight's business. Bell, Givens, and the deputies are not separate persons for purposes of these statutes. *See Whited v. Fields*, 581 F. Supp. 1444, 1455 (W.D. Va. 1984) ("a sheriff and his deputy . . . are as one person"), Because of this principal/agent relationship, Trump Tight has not alleged a conspiracy of two or more persons necessary to state a claim under Va. Code §§ 18.2-499 and 500. Any independent personal stake exception, *see Greenville Publishing Company, Inc. v. Daily Reflector Inc.*, 496 F.2d 391 (1974), to this intracorporate immunity doctrine has not been adopted by the Virginia Supreme Court. *See Little Professor Book Co. v. Reston North Pt. Village*, 41 Va. Cir. 73 *5-6 (Fairfax Co. 1996). Furthermore, the Complaint alleges that Givens and the deputies were acting within the scope of their employment as deputies of the sheriff. *See Fox v. Deese*, 234 Va. 412, 428 (1987). It is respectfully submitted that Trump Tight's state law statutory conspiracy claim should be dismissed.

## CONCLUSION

WHEREFORE, Bell respectfully requests this action as against him be dismissed with

prejudice, along with such other and further relief as is just.

        Defendant Raymond Bell

        By  s/ Carlene Booth Johnson
            Counsel
        Carlene Booth Johnson VSB No. 36473
        Perry Law Firm
        A Professional Corporation
        262 Chellowe Road
        Dillwyn, Virginia 23936
        tel:  (434) 983-5005
        fax:  (434) 983-5021
        email: perrylawfirm@hughes.net

<u>Certificate</u>

I certify that on April 24, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and on the same day, I mailed by United States Mail, first-class postage prepaid, a copy of the same to the following non-user of the CM/ECF system:

Thomas H. Roberts, Esq.
Andrew T. Bodoh, Esq.
105 South 1st Street
Richmond, VA 23219

William F. Etherington, Esq.
Leslie A. Winneberger, Esq.
Beale, Davidson, Etherington & Morris, PC
701 E. Franklin Street, Suite 1200
Richmond, VA 23219

        By  s/ Carlene Booth Johnson
            Counsel
        Carlene Booth Johnson VSB No. 36473
        Perry Law Firm
        A Professional Corporation
        262 Chellowe Road
        Dillwyn, Virginia 23936
        tel:  (434) 983-5005
        fax:  (434) 983-5021
        email:  perrylawfirm@hughes.net